Good morning, Your Honor. Jason Carr appearing on behalf of Petitioner Appellant Shropshire. This is a case that is essentially about whether or not he filed his federal petition on time, at least the original pro se federal petition. The focus of the briefing below and even to this Court has been on equitable tolling. There's been a recent decision from this Court decided within the past week that changed the dynamics of this case somewhat. I've submitted a 28-J on it. It's Gonzalez v. Sherman. Like I said, it was just decided last week. The significance of this case is that it relatively firmly establishes that when the state court, which it did in this case, entered an amended judgment because of an improper calculation of good time credits, that that resets the AEDPA time clock for both successive petition purposes and for AEDPA time. So that's going to change the timeline that this Court is looking at for the equitable tolling framework. Now, it may not reduce all of the need to have equitable tolling time, but it may, in fact. And it certainly shorts up the argument for statutory tolling. You've got a three-year period that you need equitable tolling for, right? That's essentially right. Well, maybe not now. Well, can you help me with the math? Assuming Gonzalez controls and that the clock starts at a later date than what was in the record, what's the difference? Here are the complications. The new amended judgment was entered on November the 4th, I believe it was, 2010. Okay. So he would have 30 days to appeal from that amended judgment, which he didn't do. So that means our new AEDPA date of finality, December 4th, 2010. And he filed on what? Yeah, and when did he file? He files a what's called a writ of mandate. He styles a writ of mandate in the state court on October 4th, 2011, which would be within the one-year AEDPA time and the state post-conviction one-year filing deadline. So then how long? How big a span do you need now to worry about if Gonzalez controls and you need equitable tolling? How long a period do you need the tolling for? Here's where the case becomes complicated and why I would suggest that this court order supplemental briefing because, of course, the state of Nevada should be able to weigh on this decision on this case. But the writ of mandamus under Pro Se Pleading, Canons of Constructions, and such, should have been construed by the state court as a petition for habeas corpus, especially given my client's well-documented mental health problems, mental deficiencies, legal blindness, and such. And the state court was aware of that, so that would factor into the Pro Se Pleading evaluation. Can you give me the date on which he filed? I know it's in the record, the first federal habeas petition. The first federal habeas petition was filed in 2014. That's what I thought. Well, but there's a lot of litigation that goes on after the writ of prohibition. But it sounds to me like he's still going to need equitable tolling to get him over the hump, is he not? Maybe. The other factor that we have here that's been more starkly presented by the new case is statutory tolling under 2244 D1B, which is an impediment to filing. And one factor of this case that we've extensively focused upon is that Mr. Schrapsire was extremely diligent in trying to litigate this matter in state courts, but he was hamstrung by his mental health deficiencies and by the fact that the court would never give him any assistance in getting his mental health records or his file. What was he, though? I mean, the problem, as I saw the case, was that he was pretty actively litigating habeas petitions in state court when he should have been filing something in federal court. So doesn't that cause this case to fall within our prior Ninth Circuit precedent where we look to contemporaneous actions in the state courts? That's an interesting point and one I wanted to address. It's been dispositive in several of our prior cases, Mr. Carr. Arguably dispositive, but it's a strange factor to look at. It seems to be that the cases say that if you actually file something, albeit late, then it wasn't an impediment to you filing, which, if you think about it logically, doesn't make a lot of sense. It makes perfect sense to me because you'd have a much better case if he'd done nothing. Because then you could say, well, the reason he didn't do anything was he was in administrative segregation and the warden wouldn't let him access the post office box, or he's mentally ill and didn't know anything about what to do. The problem is that he's doing something. He's doing it in the state courts and not the federal courts. Well, if he was so mentally deficient he was never able to file anything, of course we would never be here, and I imagine that there are hundreds of people who are lost in this system. But you're making a claim of entitlement to equitable relief, which means you have to show extraordinary circumstances. Right. And another distinguishing point, Your Honor, even if the Court doesn't want to address the he actually filed something argument, is that it's not just the lack of ability to get a file or mental health here. It's those two things in combination. And additionally, the – and I'll note that the district court said in its order on page – it's on EOR 9, the lower court, that it was assuming that our factual allegations are true. And one of those factual allegations is my client also was essentially illegally blind. And when we're looking at equitable tolling, we're not looking at was he never able to file anything, because, of course, as I said, we wouldn't be here at all. It's whether the delay is reasonable. But didn't we – I thought we had a Ninth Circuit case dealing with a petitioner who didn't speak English, and we looked to the fact that somehow he must have been able to either find jailhouse lawyers to help him or somebody was helping him translate. So there's no showing here to support a claim of equitable relief that blindness was an impediment if he was, in fact, blind. You would have some difficulties as a litigant in this context by relying on one factor solely. If I was here arguing that lack of file, lack of his mental health records solely, that would be a problem. If I was arguing blindness solely – But doesn't he have the burden of proof in order to establish extraordinary circumstances? And I believe we met that burden, or at least enough to trigger a hearing, which is essentially what we were asking for, to explore some of these issues. And now what we – there are things that we still don't know. Like, we cite Gibbs and Rudin recent cases from this Court which talks about attorney abandonment, the difficulty of filing a habeas petition if you don't have access to your file. We don't know here, to the extent, trial counsel, whether he was actively not giving the client a file or not addressing his concerns. What we do know is that if you look at ER-220, it contains a pretty – it's an index of all the exhibits we – supplemental exhibits we filed. And my client was actively trying to get the courts to give him his record, to give him some help, to assist him with this case. I mean, this is not a question of lack of diligence. And I understand how it works against me in some ways. But if you look at what he tried to do before he added any law clerk assistance, the first petition he filed, which was in 2010, the district court just dismissed it out of hand. It said, oh, this is just a conclusory. It doesn't really say anything. So this argument that even if you're mentally ill or you don't have your file, you should just go ahead and file something, well, that's what he did. And the state court just blew him out of the water on it. Doesn't the record before us, the transcript of all the proceedings, support mental competence? Oh, yes. It has a very strong record on mental competence. Yeah. So after the treatment and all in the state proceedings, we don't have any incompetence on the part of Mr. Shropshire, right? Well, two things to keep in mind. The record. I'm not suggesting anything other than what we have. The dusky competency standard is a very low threshold, and that the competency for whether or not you can waive your constitutional rights would be a higher threshold, in my opinion. Secondly, the Lakes Crossing reports. I don't think you've answered Judge White's question. I'm just getting to it, I swear. Okay. Go ahead. And extra for record, Volume 3, we have the psychiatric reports, and even the reports from Lake Crossing, which is the facility in Nevada where they send people to regain competency, they say he's competent with a caveat, that is, treatment must continue, his medication regime is. As long as you take medication, he'll be all right. Right. And we don't know. Another thing we could explore in evidentiary hearing is was he still receiving his medications? Was he getting treatment? Was his mental health deteriorating while he was incarcerated? These are unknown factors. And this is one of the reasons why an evidentiary hearing would be appropriate. But the problem you have is that the state of the record is that as of the time that he was sentenced, a determination had been made that he was restored to competency. And there's nothing in the record from that point to the present to suggest that somehow he became incompetent again. I think that was the thrust of my colleague's question. Right. Well, the DUSCIE standard is not the governing standard to determine whether somebody is suffering from an impediment such that it impacts their ability to file a timely state or federal registration. But is he saying he didn't have access to his prison health files? I mean, could he not have produced some suggestion that he was having mental competency problems after he'd been restored to competency? He's been in custody the whole time, has he not? Well, there is a yes. There is a we made a record. You can see the pleadings in our opposition to the motion to dismiss that it wasn't until federal counsel was appointed that we were able to obtain any of these records at all, any of the lower file or the mental health records. Do you have anything in those records to show that he became incompetent again after he went to prison? No, but we did request further factual development on that issue by way of an evidence. I understand you want a hearing in order to try and see if there's something out there. But you have his records now, right? The prison records. And they don't address the competency issue at all? All they would show us is whether or not he was his medication regime and whether or not the prison was complying with that. Okay. I don't know, though, if we have anything that shows that he regressed in his mental health in prison. We've taken you slightly over time. Let's hear from the other side, but we'll give you a chance to respond. Thank you, Your Honor. Good morning, Your Honors. May it please the Court. Lawrence Van Dyck on behalf of the State Respondents. What I was thinking I would do is first address the actual innocence arguments and then address the equitable tolling theory, unless the Court would prefer me to go in the other direction. I prefer that you talk about equitable tolling. Okay. All right. With regard to equitable tolling, I do want to make one thing clear, because I think it's been misstated again here. If you read in the opening brief on page, I think it's 21 of the opening brief, Mr. Shropshire says what I think was said again here was that he didn't have access to any of his file. He says particularly, just to quote it, he says, throughout the entirety of the State post-conviction proceedings, Mr. Shropshire never had any of the records in his case. But just 10 pages later in the same briefing on page 31, Mr. Shropshire says, Mr. Shropshire did have some of his file when he filed the State petition. He just did not have all of it. And, in fact, if you look at what he filed in the State court in the Second Habeas Petition, he actually did attach some records from his. So he did have some of it. So I think ultimately you kind of have to parse through and figure out what it is that Mr. Shropshire is saying he didn't have, and it's these three incompetency reports. In fact, he basically says that on page 22. He says, I did point to some specific documents in the Federal District Court, and he says those were those initial competency reports. So I think that's important because, as I think has already been alluded to by Your Honors this morning, what this Court has said over and over again, it's said it in at least two published opinions, and it's said it in many unpublished opinions, aside from those published opinions, is that if you have the ability to make an argument but you don't have certain materials that would help you in bolstering that argument, supporting that argument, but if you have the ability to make that argument, then you need to make that argument on time, and then you can supplement it later. This Court said that in Walden-Ramsey in a published decision in 2009. The Court said it again in Ford v. Plyler, another published decision. And it relied on those decisions multiple times. I've got a list of them here. Herbert v. Marshall, Von Villis, Williams v. Ocha, all these unpublished cases. I think part of the briefing there was some discussion of, well, these are unpublished cases. I think the reason there's so many unpublished cases is that there's two published cases that they cite to, and it's such an uncontroversial proposition. We generally don't publish if the law is clearly established by the prior published opinion. Exactly, Your Honor. And here the problem that Mr. Shropshire has, and I think this goes, I mean, one of the odd things about his equitable tolling is it's a little bit of a moving target. If you read his reply brief, he starts to really emphasize, well, I have mental health problems, and he's got blindness, so he's kind of throwing it all into the pot. But I don't think it helps because the problem is there's sort of a, essentially equitable tolling is, I think, a causation standard. You have to be able to show that whatever you're pointing to kept you from being able to do what it is that you are being able to file on time. And the problem for Mr. Shropshire is whether you're pointing to blindness or whether you're pointing to mental illness, these things that I don't think he really raised the mental illness issue until his reply brief, but even putting that aside, the problem is he can't argue that any of those things kept him from filing because he, and he doesn't even argue that, and the reason is because he did file. He filed in 2013. He filed in 2014, both his pro se federal petition and his pro se second state habeas petition. And ultimately, I think what this court is saying is, so without getting into, you know, the details of his mental illness argument and his other arguments, I would say the problem he's got is that you can't prove that you're unable to do something that you did. That's the problem he's got, and that's what this court has said multiple times in cases, and I think that applies, I mean, the cases that I cited to apply specifically to a situation here where you're pointing to certain documents, but I think it would apply with regard to whatever your argument was that you were saying you couldn't, you know, that you couldn't file on time. I'll turn to the actual innocence arguments, if the Court doesn't have any further questions on. I think he's got three serious problems with his actual innocence theory. One is Mr. Shroffshire does not even try to show that he's actually innocent of kidnapping for all 11 of the different victims slash incidences of armed robbery that are actually charged in the information. His whole argument is sort of predicated on the false factual notion that only one case was pled in the information, and if I could direct the Court to the excerpts of records. But since this argument is what I view as a somewhat curious practice in Nevada, that you will, and I guess it's by cooperation with the defense bar, you'll allow somebody to plead to something that he didn't do in order to get to the appropriate sentencing range, dismissing claims and so on. I mean, I think you call it a fictitious plea. Well, this may very well be a fictitious plea as to the kidnapping charge to which he pled, but that doesn't mean he's actually innocent within the meaning of the doctrine we're being asked to apply. I think that's his argument, Your Honor, and I actually think he's wrong on that. I think maybe we'd be okay even if he was right, if it was fictitious, but I think he's wrong, and the reason is is there was 11 robberies here, 11 different robberies that happened, and those are all contained in the information that was filed the same day as this plea. So what they did is they took all these and they put them in one basically charged act. I'm talking about the one he pled to. No, no, but he – but, Your Honor, he pled to an information. He had 11 different charges, and he – so he tries to tie it up to this Zewain ul-Abdin, and that's his argument, is I didn't – there's no way I actually kidnapped that guy. But the problem is that that doesn't match up. If you look – if you actually look at the excerpts of record 86 through 87, it's not just Mr. Zewain's the first name, but there's 11 names. There's 11 different robberies. This was a string of robberies. And so what the – it's very helpful, I think, to see – And he pled to all? He pled to all of them. And it's clear he did that. I think it would be helpful, because in the supplements of excerpts, page 12 through 13, the prosecutor during the plea colloquy actually says – and this is helpful because it's something I noticed just a couple days ago – the first degree kidnapping count applies to all of the named victims. The State would show that the defendant held against the will of one or more of the victims named and count one of the information that's just been – that's that information I just – he says the State would show that he held at least one of them. So he's saying that we're not going to say – so I don't think it's quite a fictitious plea, Your Honor. I think what he's doing is he's – I get the point, then. Okay. That's what he's doing. And it's really – because that's not – that's not what he's – he's saying, well, I can show that I didn't do it with Zewain, but I think he'd have to show it with regard to all – with regard to all 11. And he hasn't even – he hasn't even tried to do that, Your Honor. So that's the first problem. And that actually addresses his Mendoza argument that he says also, because he says, well, I can't have been guilty of both robbery and kidnapping for the same person under Nevada  law. But the problem with that is that's assuming that he actually pled guilty to robbery and kidnapping with regard to one person or one incident. And again, there's 11 different incidences charged in the information for both of those counts. And so he would have to show – there's no reason for this Court to assume that it's the same incident. I mean, he could be guilty of robbery of one of the people and kidnapping of another of the – in the incident. But I thought – I thought he was charged with 11 separate counts of armed robbery and one count of kidnapping in connection with one of the 11 robberies. If you look – so I think initially he was just charged with a bunch of robberies. And then what happened is on the day of the plea, they charged – that's EOR 86 – excerpt record 86 or 87. They actually filed an information with the court. And you see it's file stamped. And it actually has all 11 of those incidences as – and that's basically – that's why I'm – that's why in answer to Judge Fletcher's question, I don't think it's a fictitious plea in the sense that the prosecutor was thinking, reasonably so, I think, that, hey, listen, we have 11 robberies where the guy's holding somebody at a gunpoint. Well, as I understood, the fictitious related to the asportation element, and the defense was waiving any challenge to that element. And that's what I understood fictional to mean in the sense that there might be a legal issue there as to whether the victim clerk was moved a sufficient distance. And he did say that, but then he goes on to say, but I do think that with regard to one of these 11 incidences, all of which are – as he specifically says, they're all named, all of those 11. I could show – I think if we got into the weeds, I could show that – keep in mind for kidnapping in Nevada, all you have to show is that he said don't move. Right. That's kidnapping. Or you move over there. That's all you had to show. And keep in mind that there might be a problem with a robbery and a kidnapping, but he – what he's saying is, listen, I've got 11 incidents. I can show robbery with one of them, and one of the other ones I can show kidnapping. Well, what about the fact that had he been convicted on all 11, the court could have imposed consecutive sentences, and therefore they are more serious in the sense that the plea allowed him to enter a plea to kidnapping and robbery with – while armed with a firearm. And as I understand, there is a sentencing enhancement for the firearm under Nevada law that requires a consecutive sentence, right? That's right, Your Honor. It would be 15 – 1 to 15 years on the robbery. It would be essentially 2 to – I'm sorry, 2 to 15 years on the robbery, and 1 to 15 on the – that would have to be served consecutively because it was armed. So this guy was essentially looking at life on the installment plan if he was convicted. He was looking at 300 possible – 300 years. He was looking at a possible mandatory minimum of 40 percent of that, 120 years. He was looking at a possible minimum minimum. So this was a pretty good deal for him. This was a great deal, Your Honor. And so – and just the last point I want to make with regard to this more serious charges under Bosley, because I think you're – this – as far as I know, this circuit has not addressed, you know, the whole question of do you aggregate the other sentence. But the two circuits that I know of that have addressed it are the Sixth Circuit and the Fifth Circuit, the Pevler case, which is cited actually in Mr. Shropshire's opening brief on page 42, and then also the Scruggs case, which is the Fifth Circuit case out of 2013. Both of them say that you compare – you take a practical approach as you compare the maximum possible sentence when you aggregate them. Thank you, Your Honor. So let me ask a question for you. Go ahead. Just before you – as I understand, they're separate indictments, let's call them. Eleven counts are separate crimes. And what you did – what the prosecutor did is they pulled all those together under one criminal information. That's correct, Your Honor. So he pled to that one single document indicating or encompassing all of those outstanding robberies. And he didn't match it up to any particular one. That's the argument you're making, that because within that combination there could be in one kidnapping charge or proven, let's say, one exportation, that the prosecutor was not saying we made it up. He's saying that – you're saying that he has disproved that it existed in any one of those 11. And I just want to make clear, I'm not saying that after the fact. That's why I want to direct the court to supplement excerpts. No, that's what I'm saying. The prosecutor actually said that during the plea colloquy, Your Honor. I just want to make sure you understood. Absolutely, Your Honor. Thank you, sir. Okay. Thank you. Would you please put a minute on the clock for rebuttal? Thank you. Just to note briefly, you could aggregate all of these robberies. They still wouldn't have a higher maximum sentence in the kidnapping, which is life. Well, sure they would if they were consecutive sentences. Yeah, you can't get higher sentences in life. I mean, theoretically. You could say that the maximum – But he got, what, 15 to life and he's eligible for parole after 15? Five to life. Five to life. So he's eligible for parole after five, right? Right. Okay. But that's not that important. Well, it's a pretty good deal. I'm not disputing that. Okay. All right. Regarding what he could file and the significance that it has on equitable tolling, I would just like to stress, here's my final point, that my client filed four different pleadings with the State court that were all ignored as deficient or ignored as conclusory or just basically – and one of them, the right of mandate, was that the judge said it makes no real claim at all. And the significance of this is that he is doing what the law says he has to – what the deputy attorney general is saying he should have done is just file something and try to amend it later. But that didn't work. Four separate times. On 9-17-2010, he files his first pro se petition. On 9-4-2011, he files another – he files his right of mandamus. On 1-17-2012, he files a pro per request for a court order. On 4-11-2012, he files yet another request for submission. And under Holland v. Florida, if it had all been done in conjunction with his federal habeas petition, he might have a pretty strong argument. But he's not in federal court on all this stuff. He's litigating in state court. But he's got to litigate the state court before he gets anything exhausted. And he's doing everything he can. And it isn't until – last thing I'd like to say is that on June 12, 2013, he files a coherent state post-conviction petition, but you can – it's detailed in the petition that he finally has the assistance of a law clerk to do that. Yeah. Okay. Thank you. Thank you. Now, you asked for supplemental briefing. I think that would be appropriate. In light of the Gonzales case, unless we give a written order asking for supplemental briefing, we don't need it. I understand. Okay. Thank you. Thank you. Shropshire v. Baca is now submitted for decision. Thank both of you for your arguments.
judges: W. Fletcher, Tallman, Hoyt